UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RASSET LAHDIR,

    Petitioner,               Civil No. 2:20-CV-12296
                                  HONORABLE DENISE PAGE HOOD
v.                            CHIEF UNITED STATES DISTRICT JUDGE

JOHN CHRISTIANSEN,

    Respondent,
_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DENYING THE MOTION FOR RECONSIDERATION (ECF No. 10), DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING PETITIONER LEAVE TO APPEAL *IN FORMA PAUPERIS***

Rasset Lahdir, ("Petitioner"), confined at the Central Michigan Correctional Facility in St. Louis, Michigan, filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his conviction for third-degree criminal sexual conduct, M.C.L.A. 750.520d. For the reasons that follow, the petition for writ of habeas corpus is **DENIED WITH PREJUDICE.**

**I. BACKGROUND**

Petitioner was convicted following a jury trial in the Ottawa County Circuit Court. This Court recites verbatim the relevant facts regarding petitioner's conviction from the Michigan Court of Appeals' opinion affirming his conviction,

1

since they are presumed correct on habeas review. *See Wagner v. Smith*, 581 F. 3d

410, 413 (6th Cir. 2009):

> This case stems from allegations that defendant sexually assaulted the victim while on a date. Defendant and the victim met at a bar and exchanged numbers. Later, the two went on a series of dates. On September 24, 2017, defendant invited the victim to his home before a planned dinner. While they were at defendant's home, defendant attempted to have sexual intercourse with the victim. The victim explained to defendant that she did not wish to have sex and was uncomfortable. When defendant continued to undress her, the victim repeatedly attempted to stop him and vocalized her lack of consent. Defendant proceeded to undress the victim and genitally penetrate her. After the assault, the victim went to the hospital and submitted to a sexual assault examination. The victim told the sexual assault nurse who examined her that she did not consent to defendant's sexual advances. Detective David Bytwerk interviewed defendant a few days later at the police station. Defendant drove himself to the police station, was not restrained in any way, and was told that he would not be arrested that day. Furthermore, the door of the interview room was not locked and Detective Bytwerk read defendant his *Miranda* rights before the interview began. Defendant was not a native English speaker, but Detective Bytwerk did not believe during the interview that language was a barrier. In the interview, defendant admitted that he had sexual intercourse with the victim. After the interview concluded, defendant left the police station.

> Defendant was eventually arrested and convicted of CSC-III. At trial, defendant was provided with interpreters, and he did not testify. The trial court did not create a record of defendant waiving his right to testify.

> After filing the present appeal, defendant filed a motion to remand to the trial court. Defendant argued that the trial court violated his constitutional right to testify by not advising defendant of his right to testify through a translator when defendant only spoke English as a second language. Defendant also alleged that defense counsel was

ineffective for failing to advise defendant of his right to testify at trial and for failing to file a motion to suppress statements from defendant's police interrogation. This Court granted defendant's motion and remanded to the trial court for an evidentiary hearing. *People v. Lahdir*, unpublished order of the Court of Appeals, entered on May 22, 2019 (Docket No. 345452).


On remand, the trial court held an evidentiary hearing. Detective Bytwerk, defendant's trial attorney, and defendant testified at the evidentiary hearing. Following the evidentiary hearing, the trial court denied defendant's motion for new trial. Specifically, the trial court found that defendant adequately understood English even without an interpreter and, therefore, that he understood that he had a right to testify at trial; the trial court also found that it was not required to obtain a waiver of this right on the record. Additionally, the trial court found, defendant understood English well enough to make a knowing and voluntary statement to Detective Bytwerk during his interview at the police station. Accordingly, any motion by defendant's trial attorney to suppress this statement would have failed. This appeal followed.

*People v. Lahdir*, No. 345452, 2019 WL 7206097, at * 1 (Mich. Ct. App. Dec. 26, 2019), *lv. den.* 505 Mich. 1044, 941 N.W.2d 661 (2020).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Where the Fifth, Sixth, and Fourteenth Amendments guarantee a defendant's rights to testify on his own behalf at trial, the trial court violated Lahdir's right to testify when it failed to advise him of that right and obtain a waiver on the record where Lahdir (1) required the use of a translator at trial; and (2) the case was a one-on-one credibility contest and where the Sixth Amendment requires the effective assistance of counsel, trial counsel was ineffective for failing to advise Lahdir of his right to testify.

II. Where the Fifth and Fourteenth Amendments protect a defendant's right to be free from compelled self-incrimination, trial counsel was ineffective for failing to file a motion to suppress Lahdir's statement

from a police interrogation when his waiver of rights was involuntary, and know knowingly or intentionally made to do his language barrier.

III. Where the Fourteenth Amendment requires fundamental fairness in the use of evidence against a criminal defendant, the trial court violated Lahdir's right to due process and committed plain error when it allowed the prosecution to admit an extensive recounting of complainant's hearsay statements to bolster complainant's version of events. Where the Sixth Amendment requires the effective assistance of counsel, trial counsel was ineffective for failing to object to the admission of complainant's hearsay statements that bolstered her version of events.

## II. STANDARD OF REVIEW

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), imposes the following standard of review for

habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court's decision is "contrary to" clearly established federal law if the

state court arrives at a conclusion opposite to that reached by the Supreme Court

on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103.

### III. DISCUSSION

**A. The motion for reconsideration is DENIED.**

On November 23, 2020, this Court granted respondent's motion for an extension of time to file an answer to the petition. (ECF No. 8). Petitioner had

filed an objection to respondent's motion (ECF No. 9), which this Court had reviewed prior to granting respondent's order.

Petitioner filed a motion for reconsideration of the Court's order. Petitioner argues that this Court erred in granting respondent an extension of time to file the answer. Petitioner claims that respondent gave insufficient reasons for an enlargement of time, namely, respondent's claim that the original deadline date, coupled with the effect that the Covid-19 pandemic was having on state court operations, was making it difficult for respondent to get the Rule 5 materials by the original due date for the answer. Petitioner also suggests that this Court granted the motion without reading his objection to respondent's motion.

U.S. Dist.Ct. Rules, E.D. Mich. 7.1 (h) allows a party to file a motion for reconsideration. However, a motion for reconsideration which presents the same issues already ruled upon by the court, either expressly or by reasonable implication, will not be granted. *Id.* The movant shall not only demonstrate a palpable defect by which the court and the parties have been misled but also show that a different disposition of the case must result from a correction thereof. U.S. Dist. Ct. Rules, E.D. Mich. 7.1(h)(3). "A 'palpable defect' is a defect that is obvious, clear, unmistakable, manifest, or plain." *See Scozzari v. City of Clare,* 723 F. Supp. 2d 974, 981 (E.D. Mich. 2010).

The Court considered petitioner's objections prior to ruling on the motion for extension of time. Moreover, petitioner offered no proof to rebut respondent's claim that she needed additional time to obtain the Rule 5 materials and file the answer. Petitioner's motion for reconsideration will be denied, because he is merely presenting issues which were already ruled upon by this Court, either expressly or by reasonable implication, when the Court granted respondent an extension of time to file the answer and Rule 5 materials. *See Hence v. Smith,* 49 F. Supp. 2d 549, 553 (E.D. Mich. 1999).

**B. The procedural default issue.**

Respondent contends that portions of petitioner's first and third claims are procedurally defaulted because he failed to object to the alleged error at trial.

Procedural default is not a jurisdictional bar to review of a habeas petition the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). In addition, "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F. 3d 212, 215 (6th Cir. 2003)(citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525.

Petitioner claims that his trial counsel was ineffective for failing to object to the judge's failure to determine whether petitioner wanted to waive his right to testify and for failing to object to the admission of hearsay testimony. Ineffective assistance of counsel may establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000). A defendant must satisfy a two prong test to establish the denial of the effective assistance of counsel. First, the defendant must show that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. [1]

Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claims, it would be easier to consider the merits of the claims. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).

---

[1] To avoid repetition, the Court will not repeat the *Strickland* standard when addressing each of petitioner's individual ineffective assistance of counsel claims.

## C. Claim # 1.  The right to testify/ineffective assistance of counsel claim.

Petitioner first claims that his right to testify was infringed because the judge failed to inquire on the record whether petitioner knew he had a right to testify and that he wished to waive that right.  Petitioner argues that is was particularly crucial for the trial judge to do this in light of petitioner's alleged language barrier. Alternatively, petitioner argues that trial counsel was ineffective for failing to advise him of his right to testify and/or discouraging petitioner from testifying.

The Michigan Court of Appeals rejected petitioner's claim at great length:

"A defendant's right to testify in his own defense arises from the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution. Although counsel must advise a defendant of this right, the ultimate decision whether to testify at trial remains with the defendant." *People v. Bonilla-Machado*, 489 Mich. 412, 419; 803 N.W.2d 217 (2011) (citations omitted). "[T]here is no requirement in Michigan that there be an on-the-record waiver of a defendant's right to testify." *People v. Harris*, 190 Mich. App. 652, 661; 476 N.W.2d 767 (1991).

Defendant argues for a narrow exception to *Harris*: that when the trial court is aware that a defendant does not speak English, an on-the-record waiver is required. Defendant analogizes the fundamental right to a translator in criminal prosecutions to the instant case and argues that he was entitled to a requirement of an express, on-the-record waiver of his right to testify.

A defendant possesses a constitutional right to an interpreter in criminal proceedings. *People v. Gonzalez-Raymundo*, 308 Mich. App. 175, 188-189; 862 N.W.2d 657 (2014). This right is "not merely statutory as codified by MCL 775.19a, but constitutional, and thus subject to every reasonable presumption against its loss." *Id*. at 188. The waiver of a right to an interpreter must be placed on the record. See *id.* at 189 (holding that because the trial court failed to personally

ask defendant whether he was aware of his rights to an interpreter, the waiver of that right was uninformed).

Defendant's analogy to the right to an interpreter actually highlights why an on-the-record waiver of the right to testify was unnecessary in this case. Providing an interpreter for a defendant who does not understand English ensures that the defendant can understand the entirety of the proceedings in the same way that an English-speaking individual could. See *Gonzalez-Raymundo*, 308 Mich. App. at 188-189 (holding that providing an interpreter to a defendant who does not speak English ensures that the defendant can adequately understand the proceedings). Accordingly, the presence and participation of interpreters in this case ensured that defendant understood the proceedings in the same way that an English-speaking defendant would have. Indeed, defendant has not made any argument that his interpreters were deficient in any way. Thus, because defendant was able to understand the proceedings and thus was in no different position than any other defendant in that regard, the trial court was not required to obtain a waiver of defendant's right to testify on the record. See *Harris*, 190 Mich. App. at 661 ("[T]here is no requirement in Michigan that there be an on-the-record waiver of a defendant's right to testify.").

Consequently, there was no external factor, such as an inability to understand the proceedings, which precluded defendant from understanding and thus invoking his right to testify. In addition, it is clear from our review of the record that defendant possessed a working knowledge of the English language and an ability to communicate. There was no barrier to defendant's ability to vocalize his desire to testify at trial in his own defense. Absent such a barrier, there was no reason for the trial court to intervene and obtain a waiver of the right to testify on the record, or even to question whether defendant was aware of his right to testify.

Moreover, it is clear from the record that defendant did understand that he possessed the right to testify at trial. Defendant's own affidavits submitted in support of his claim acknowledge that on at

least two occasions, he discussed with defense counsel whether he should testify. Consequently, defendant's claim on appeal relies on a distinction between being told that he possessed an *ability* to testify in the trial court—which admittedly occurred—and a constitutional *right* to testify in the trial court—which defendant disputes.

This distinction is of no consequence here. Our focus when reviewing the waiver of a defendant's right to testify is whether the defendant possessed sufficient knowledge of the ability to testify in order to make a rational choice. See *Bonilla-Machado*, 489 Mich. at 421 (holding that the defendant's right to testify was not violated because the "defendant made a rational choice not to testify after he was warned of the risks involved."). Defendant and his trial attorney discussed at least two times whether defendant would testify at trial. Thus, defendant was aware of his *ability* to testify, even if no one ever explained to him basis for that ability, i.e., that he had a *right* to do so. Consequently, defendant's right to testify was not violated. Similarly, because defendant's trial attorney discussed defendant's ability to testify at trial, defendant has failed to establish the factual predicate for his claim that his trial attorney was ineffective for failing to advise him about his right to testify trial. See *Hoag*, 460 Mich. at 6. Thus, defendant's claim of ineffective assistance of counsel fails in this regard.

*People v. Lahdir*, at \*5–6 (emphasis original).

When a tactical decision is made by an attorney that a defendant should not testify, the defendant's assent is presumed. *Gonzales v. Elo*, 233 F. 3d 348, 357 (6th Cir. 2000). A trial court has no duty to inquire *sua sponte* whether a defendant knowingly, voluntarily, or intelligently waives his right to testify. *United States v. Webber*, 208 F. 3d 545, 551-52 (6th Cir. 2000); *See also Goff v. Bagley*, 601 F.3d 445, 471 (6th Cir. 2010). In addition, a state trial judge is not constitutionally required to specifically address a criminal defendant and both

explain that he or she has a right to testify and ask the defendant whether he or she wishes to waive that right. *Siciliano v. Vose*, 834 F. 2d 29, 30 (1st Cir. 1987); *See also Liegakos v. Cooke,* 106 F. 3d 1381, 1386 (7th Cir. 1997). Waiver of the right to testify may be inferred from a defendant's conduct. Waiver is presumed from the defendant's failure to testify or notify the trial court of the desire to do so. *Webber,* 208 F. 3d at 551. Here, petitioner did not alert the trial court at the time of trial that he wanted to testify. Thus, his failure to do so constitutes a waiver of this right. *Id.; Goff,* 601 F. 3d at 471.

Petitioner acknowledges that federal and state law do not normally require a judge to ascertain whether a defendant wishes to testify. Petitioner argues that an exception should be made in this case due to petitioner's alleged lack of fluency in the English language.

Petitioner's alleged language barrier did not prevent him from testifying, in light of the fact that the court provided him with an interpreter in the French language (one of the languages petitioner is fluent in), petitioner participated in the trial with the assistance of the interpreter, and never alerted the judge through that interpreter of his desire to testify. *See Yu Tian Li v. United States*, 648 F.3d 524, 531–32 (7th Cir. 2011).

Petitioner is unable to prevail on his related ineffective assistance of counsel claim.

First, petitioner in his own affidavit that he submitted to the state courts admitted that his attorney spoke with him about testifying. Petitioner claimed in his affidavit that his attorney advised him not to testify. (ECF No. 12-7, PageID. 833-34). It is clear from petitioner's own affidavit that he was aware of his ability to testify if he so chose.

Secondly, petitioner's trial counsel testified at the post-trial hearing conducted before the trial court. Defense counsel testified that he wanted petitioner to take the stand and testify. (ECF No. 12-6, PageID. 720-21). Counsel testified that it was petitioner who was reluctant and nervous about testifying and did not want to commit to doing so. (*Id.,* PageID. 721-22, 731). Counsel testified that there was always someone present at his meetings with petitioner to translate various legal terms and rights to petitioner. (*Id.,* PageID. 721-22). Counsel later indicated that he was sure he had one of the court-appointed interpreters explain the right to testify to petitioner. (*Id.,* PageID. 739-40). Counsel testified that he would not "coerce" petitioner into testifying, because "that could be disastrous too." (*Id.*, PageID. 733). Following the evidentiary hearing, the trial court credited the testimony of defense counsel. (ECF No. 12-7, PageID. 1031). The Michigan Court of Appeals, in turn, deferred to the trial court's credibility determination. *Lahdir*, 2019 WL 7206097, at *4–6.

While the ultimate question of ineffective assistance of counsel is a mixed question of law and fact, the factual findings of state courts underlying such an analysis are accorded the presumption of correctness in federal habeas proceedings. *See Abdur'Rahman v. Bell*, 226 F. 3d 696, 702 (6th Cir. 2000). This is particularly so where credibility determinations are involved. *See e.g. Mix v. Robinson,* 64 F. App'x 952, 956 (6th Cir. 2003). The presumption of correctness also "also applies to those implicit findings of fact that are inherent in [a state court's] resolution of conflicting evidence." *McPherson v. Woods*, 506 F. App'x. 379, 387 (6th Cir. 2012). In order to overturn this presumption of correctness, a habeas petitioner must either show that the record as a whole did not support the factual determination or must prove by clear and convincing evidence that the factual determination was erroneous. *See Poole v. Perini,* 659 F. 2d 730, 736 (6th Cir. 1981). In order to reject petitioner's ineffective assistance of counsel claim, the trial judge credited defense counsel's testimony that he had advised petitioner that he had a right to testify, had actually recommended that petitioner testify, but that petitioner had been reluctant to do so. Petitioner presented no evidence to this Court to rebut the trial judge's credibility finding. Accordingly, petitioner is not entitled to relief on his first claim.

### D. Claim # 2. The *Miranda*/ineffective assistance of counsel claim.

Petitioner next claims that he did not knowingly or voluntarily waive his *Miranda* rights before giving a statement to the police, because of his alleged inability to understand the English language. Petitioner also claims that counsel was ineffective for failing to move for the suppression of petitioner's statement on this basis.

The Michigan Court of Appeals rejected the claim:

> Here, defendant drove himself to the police station, was not restrained in any way, and was told that he would not be arrested that day. Furthermore, the door of the interview room was not locked and defendant had a working knowledge of the English language. The trial court found that defendant was not in custody at the time of his interrogation, but failed to make a finding regarding whether defendant knew that the door to the interview room was unlocked and that he would not be arrested that day. The trial court did, however, find that defendant understood English well enough to waive his *Miranda* rights. Because defendant understood English well enough to knowingly and voluntarily waive his *Miranda* rights had he been in custody, it follows that he understood English well enough to understand that the door of the interview room was not locked and that he would not be arrested that day. Furthermore, defendant did not require any understanding of English to know that he drove himself to the police station and that he was not restrained in any way during the interview. Accordingly, based on the objective facts surrounding defendant's interview, he was not in custody, and the police were under no obligation under *Miranda* to advise him of his rights. Because *Miranda* was inapplicable, there is no presumption that the statements defendant made during the interview were involuntary. Consequently, a motion to suppress the statements made by defendant during the interview would have failed. As such, defendant's trial attorney was not ineffective for failing to file a motion to suppress the statements defendant made in the interview.

*People v. Lahdir*, 2019 WL 7206097, at * 7 (internal citations omitted).

A prosecutor may not use a defendant's statements which stem from custodial interrogation unless the prosecutor can demonstrate the use of procedural safeguards which are effective to secure a defendant's privilege against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966).  Unless other means are devised to inform a suspect of his right to silence and a "continuous opportunity to exercise it," the following warnings are required to be given to a suspect:

> 1. the person must be warned that he or she has a right to remain silent;
> 2. that any statement he does make may be used against him;
> 3. and that he has a right to the presence of an attorney, either appointed or retained.

*Miranda*, 384 U.S. at 444.

Police officers are not required to administer *Miranda* warnings to every person whom they question, nor are officers required to administer *Miranda* warnings simply because the questioning takes place in a police station or because the questioned person is one whom the police suspect. *Oregon v. Mathiason,* 429 U.S. 492, 495 (1977).  Instead, *Miranda* warnings are required "only where there has been such a restriction on a person's freedom as to render him or her 'in custody.'" "Custody," for purposes of *Miranda,* requires a "significant deprivation of freedom." *See Mason v. Mitchell,* 320 F. 3d 604, 632 (6th Cir. 2003).

Two discrete inquiries are essential to determining whether a criminal suspect was in custody at time of interrogation, and therefore entitled to *Miranda* warnings: first, what were the circumstances surrounding the interrogation, and second, given those circumstances, would a reasonable person have felt that he or she was not at liberty to terminate the interrogation and leave. *See Thompson v. Keohane*, 516 U.S. 99, 112 (1995).

The evidence at trial establishes that petitioner voluntarily showed up at the police station. Petitioner was not arrested at that point or placed in handcuffs or otherwise detained. The door to the interrogation room was unlocked. Petitioner was not told he was a suspect or that he was not free to leave. In fact, petitioner was allowed to leave after speaking with the police. Under the circumstances, petitioner was not in custody, within the meaning of *Miranda,* when he spoke with the police. *See Biros v. Bagley*, 422 F.3d 379, 389–90 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d at 632.

Without any significant evidence suggesting that petitioner was subjected to custodial interrogation within the meaning of *Miranda* when he spoke with the detective at the police station, "a fairminded jurist could conclude that counsel acted reasonably in choosing not to move for suppression" of petitioner's statement. *See Wilkens v. Lafler*, 487 F. App'x. 983, 993 (6th Cir. 2012). "Given the dearth of record evidence suggesting custody, a fairminded jurist could

conclude that [petitioner's] counsel acted competently in focusing his efforts elsewhere." *Id.*, at 994. Moreover, petitioner is unable to show that he was prejudiced by counsel's alleged ineffectiveness, "because, even if his counsel had filed the motion to suppress, the trial court would have almost certainly denied it as meritless." *Id.* Petitioner is not entitled to relief on his second claim.

### E. The hearsay evidence/ineffective assistance of counsel claim.

Petitioner finally argues that the judge erred in admitting statements made by the victim to the sexual assault nurse. Petitioner claims that such statements were inadmissible hearsay and were used to bolster the victim's credibility. Petitioner argues that counsel was ineffective for failing to object to the admission of the testimony.

The Michigan Court of Appeals concluded that the nurse's testimony was admissible under the medical treatment exception to the hearsay rule found in M.R.E. 803(4). *People v. Lahdir,* 2019 WL 7206097, at * 3. Consequently, counsel was not ineffective for failing to object to its admission. *Id.*

The admissibility of evidence under Michigan's hearsay rules is not cognizable in a habeas corpus proceeding. *See Byrd v. Tessmer,* 82 F. App'x. 147, 150 (6th Cir. 2003); *See also Rhea v. Jones*, 622 F. Supp. 2d 562, 589 (W.D. Mich. 2008); *Cathron v. Jones,* 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002)(petitioner's

claim that state court erred in admitting hearsay testimony under state evidentiary rule governing declarations against penal interest not cognizable in federal habeas review, where the claim alleged a violation of state law, not a violation of federal constitutional rights). The admission of this evidence in violation of Michigan's rules of evidence would not entitle petitioner to relief.

Federal habeas courts "'must defer to a state court's interpretation of its own rules of evidence and procedure' when assessing a habeas petition." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005)(quoting *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)). Because the Michigan Court of Appeals determined that the sexual assault nurse's testimony was admissible under Michigan law, this Court must defer to that determination in resolving petitioner's ineffective assistance of counsel claim. *See Brooks v. Anderson*, 292 F. App'x. 431, 437-38 (6th Cir. 2008). Because this Court "cannot logically grant the writ based on ineffective assistance of counsel without determining that the state court erred in its interpretation of its own law," this Court is constrained to reject petitioner's third ineffective assistance of trial counsel claim. *See Davis v. Straub*, 430 F.3d 281, 291 (6th Cir. 2005).

## IV. CONCLUSION

This Court concludes that the petitioner is not entitled to federal habeas relief on the claims contained in his petition.

In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

This Court denies a certificate of appealability because reasonable jurists would not find this Court's assessment of the claims to be debatable or wrong. However, although jurists of reason would not debate this Court's resolution of petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and petitioner may proceed *in forma pauperis* on appeal. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).

## V. **ORDER**

Based upon the foregoing, IT IS ORDERED that:

(1) the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

**(2)** The motion for reconsideration (ECF No. 10) is **DENIED.**

(3) The renewed motion for immediate consideration (ECF No. 17) is **MOOT**.

(4) A certificate of appealability is **DENIED.**

(5) Petitioner will be granted leave to appeal *in forma pauperis.*

s/Denise Page Hood
Chief Judge, United States District

**Dated:** June 2, 2021